Filed 8/27/21  Krawczyk v. Cook CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| JOHN F. KRAWCZYK II,<br><br>     Plaintiff and Appellant,<br><br>v.<br><br>TIMOTHY D. COOK et al.,<br><br>     Defendants and Respondents. | H046506<br>(Santa Clara County<br> Super. Ct. No. 1-14-CV262174) |

Plaintiff John F. Krawczyk II challenges the superior court's dismissal of his shareholder derivative action against defendants Apple Inc. and five individuals who were members and former members of Apple's Board of Directors.  The court sustained defendants' demurrer to plaintiff's third amended complaint (TAC) without leave to amend on the ground that plaintiff had failed to adequately plead demand futility.[1]  Plaintiff claims that the TAC adequately pleaded demand futility and, alternatively, that he could have amended it to do so.  We reject his arguments and affirm the judgment.

## I.     DEMAND FUTILITY PLEADING REQUIREMENTS

Ordinarily, before bringing a shareholder derivative action, a plaintiff must make a presuit demand on the corporation's board of directors.  (*Bader v. Anderson* (2009) 179 Cal.App.4th 775, 789 (*Bader*).)  This presuit demand requirement may be excused due to futility only under " ' "extraordinary" ' " circumstances.  (*Ibid.*)  " '[D]emand typically

---

[1] Although the TAC also named other plaintiffs, Krawczyk alone appealed from the superior court's dismissal of the action.

is deemed futile when a majority of the directors have participated in or approved the alleged wrongdoing, [citation], or are otherwise financially interested in the challenged transactions, [citation].' [Citation.]" (*Id.* at p. 790.)

Under California law, which applies here because Apple is a California corporation, a shareholder derivative action may not be "instituted or maintained" unless "[t]he plaintiff alleges in the complaint *with particularity* plaintiff's efforts to secure from the board such action as plaintiff desires, or the reasons for not making such effort . . . ."[2] (Corp. Code, § 800, subd. (b)(2), italics added.) "[G]eneral averments that the directors were involved in a conspiracy or aided and abetted the wrongful acts complained of will not suffice to show demand futility." (*Bader*, *supra*, 179 Cal.App.4th at p. 790.) Instead, " 'the court must be apprised of facts specific to each director from which it can conclude that that particular director could or could not be expected to fairly evaluate the claims of the shareholder plaintiff.' [Citation.] Thus, the court, in reviewing the allegations to support demand futility, must be able to determine on a director-by-director basis whether or not each possesses independence or disinterest such that he or she may fairly evaluate the challenged transaction." (*Ibid.*)

In *Aronson v. Lewis* (Del. 1984) 473 A.2d 805 and *Rales v. Blasband* (Del. 1993) 634 A.2d 927, 933 (*Rales*), the Delaware Supreme Court established the two tests that California courts have "commonly employed in determining the adequacy of the pleading of demand futility." (*Bader*, *supra*, 179 Cal.App.4th at p. 790.) These two tests have been applied regardless of whether California or Delaware substantive law applies in a particular case. (*Id.* at p. 791, fn. 5 [applying *Aronson* and *Rales* in shareholder derivative action against Apple]; *Oakland Raiders v. National Football League* (2001) 93

---

[2] The superior court expressly found that California law, not Delaware law, applied because Apple is a California corporation. The parties do argue otherwise.

Cal.App.4th 572, 586, fn. 5 [applying *Aronson* in action against a California corporation].)

The *Aronson* test "is well suited to actions challenging conscious decisions by boards to act or refrain from acting, the business judgment rule." (*Bader*, *supra*, 179 Cal.App.4th at p. 791.) Under the *Aronson* test, "a court, in deciding whether a plaintiff will be excused from making a demand on the board, must evaluate 'whether, under the particularized facts alleged, a reasonable doubt is created that: (1) the directors are disinterested and independent and (2) the challenged transaction was otherwise the product of a valid exercise of business judgment.' " (*Ibid*.) "[T]he fact that the board approved the challenged transaction, of itself, does not establish demand futility under the theory that such approval 'automatically connotes "hostile interest" and "guilty participation" by directors.' " (*Id.* at p. 793.)

The *Rales* test applies "where there was no board action, such as where (1) the business decision complained of was made by the board, the majority of whose members were no longer part of the directorate when the suit was filed; (2) the matter complained of was not a board business decision; or (3) the challenged decision was made by the board of a different corporation." (*Bader*, *supra*, 179 Cal.App.4th at p. 791.) "In those instances, the court inquires 'whether the board that would be addressing the demand can impartially consider its merits without being influenced by improper considerations. Thus, a court must determine whether or not the particularized factual allegations of a derivative stockholder complaint create a reasonable doubt that, as of the time the [operative] complaint is filed, the board of directors could have properly exercised its independent and disinterested business judgment in responding to a demand.' " (*Id*. at pp. 791-792.) We review the adequacy of demand futility allegations de novo. (*Id*. at p. 786.)

3

## II.    PROCEDURAL BACKGROUND

This action was initiated in March 2014, and it originally named Timothy D. Cook, Arthur D. Levinson, William V. Campbell, Millard S. Drexler, Albert A. Gore Jr., Andrea Jung, Fred D. Anderson, and Eric E. Schmidt as individual defendants and Apple Inc. as a nominal defendant.  A demurrer was sustained with leave to amend due to the original complaint's inadequate demand futility allegations.  An amended complaint was filed, which did not include Gore, Jung, or Anderson as defendants.  Again, the court sustained the demurrer on the same ground with leave to amend.

After a second amended complaint (SAC) was filed in 2016 (naming the same defendants), defendants again demurred on the same ground.  This time the superior court found that the SAC adequately alleged that a demand would have been futile as to five members of Apple's 2014 eight-member Board of Directors (the Board):  Cook, Campbell, Drexler, Levinson, and non-defendant Robert Iger.  The court concluded that demand futility was to be assessed by looking at the Board as it was composed at the time of the 2014 filing of the *original* complaint.  It found that the SAC had made specific allegations as to Campbell, Cook, and Levinson that they knew of the illegal, anticompetitive, non-solicitation agreements that formed the basis for the action.  As to Iger and Drexler, the court noted that plaintiff had made no "specific" allegations that they knew of the non-solicitation agreements, but it concluded that the fact that the agreements were "widely-known" among Apple employees was sufficient to support a conclusion that Iger and Drexler must have known about them.  Since the court found that the SAC's allegations were sufficient to show that five members of the 2014 Board

4

were not disinterested, the court overruled the demurrer as to the breach of fiduciary duty and indemnification causes of action.[3]

Apple filed a writ petition in this court challenging the superior court's order overruling the demurrer. In December 2017, this court granted Apple's petition. (*Apple Inc. v. Superior Court* (2017) 18 Cal.App.5th 222 (*Apple Inc.*).) This court held that demand futility must be demonstrated as to the Board in place when the operative amended complaint was filed after a demurrer was sustained with leave to amend. (*Id.* at pp. 251-252.) The superior court had erred in assessing the adequacy of the SAC's pleadings as to the 2014 Board in place when the original complaint was filed rather than as to the 2016 Board in place when the SAC was filed. (*Ibid.*) Notably, Campbell and Drexler had left the Board and been replaced with two other members by the time the SAC was filed. (*Id.* at p. 242.) This court determined that the SAC's allegations were "insufficient to support an inference of lack of disinterest or independence, at least as to directors Gore and Jung." (*Id.* at p. 255.) While the superior court was permitted to draw reasonable inferences, such inferences could be drawn only where they were "*adequately founded on particularized allegations.*" (*Id.* at p. 257) This court observed that the superior court's conclusion as to Iger appeared to be supported by particularized allegations, but even including him did not amount to a majority of the Board. (*Id.* at pp. 257-258.) Given the posture of the case, this court directed the superior court to grant leave to amend if plaintiff sought it. (*Id.* at p. 258.)

After plaintiff filed the TAC in March 2018, the superior court sustained defendants' demurrer without leave to amend and entered a judgment of dismissal. Plaintiff timely filed a notice of appeal.

---

[3] However, the court sustained the demurrer without leave to amend as to the additional causes of action that had been added after the prior demurrer had been sustained with leave.

5

## III. THE THIRD AMENDED COMPLAINT

Plaintiffs filed the TAC in March 2018. Cook, Levinson, and Iger remained on the Board when the TAC was filed. The other members of the eight-member 2018 Board were Gore, Jung, Susan Wagner, Ronald Sugar, and James Bell. The TAC named the same individual defendants as the SAC, which included Cook and Levinson but none of the other members of Apple's 2018 Board.

The TAC alleged two causes of action: breach of fiduciary duty and indemnification. These causes of action were based on allegations that the individual defendants breached their duties to Apple by "participat[ing] in the conspiracy" surrounding illegal anticompetitive agreements between Apple and other companies, and by failing to "prevent Apple from violating the law." The illegal anticompetitive agreements, which began in 2005, were agreements between Apple and several other companies "not to directly cold call" each other's employees. "Apple entered into agreements and implemented practices and policies that prohibited the recruitment of employees from companies [including Google] where Apple Board members had executive or director positions, or other, similar relationships." Apple also exchanged "confidential and sensitive compensation information with competitors," which the TAC alleged was "illicitly obtained-information." The illegal bilateral agreements were unwritten, and the TAC did not allege that Apple's Board itself had made any decision to enter into the illegal agreements or to obtain the illicit compensation information. The illegality of the bilateral anticompetitive agreements was brought to light by a 2009 Department of Justice investigation, which settled in 2010, and a 2011 class action lawsuit, which settled in 2015.

The TAC alleged that one of the purposes of the illegal bilateral agreements was "to preserve Board relationships" and avoid conflicts of interest in situations where Apple Board members had "dual roles at different companies.'" The illegal agreements were largely with companies that shared common board members with Apple or that had

6

executives who were on Apple's Board. However, even before entering into the illegal agreements, Apple had already established a "unilateral policy of not cold calling employees from companies associated with Apple's Board" in order to "preserve Board relationships" and avoid conflicts of interest.

The TAC generally alleged: "Based upon the overlapping boards of these companies, the close relationship between these companies, the extent of the agreements, and [former Apple CEO Steve] Jobs' vocal disapproval of employees changing companies, there can be no doubt that the entire Board knew about the agreements and facilitated the unlawful conspiracy." It also generally alleged that there was "both motive and opportunity" for Board members to learn of these agreements from other directors.

The TAC alleged three theories as to why a demand would have been futile. The first theory was that a majority of the Board "personally benefited from the anticompetitive agreements." The TAC alleged that this was true as to Levinson, Gore, and Jung simply because they were on the Board prior to 2009, while those agreements were in effect, and was true as to Cook because he was a director at one of the companies on Apple's " 'Do Not Cold Call' " list while the illegal agreements were in effect.

The TAC's second theory was that a majority of the Board "face[d] a substantial likelihood of liability for [participating in and] facilitating the anticompetitive scheme." The primary facts alleged to support this theory were that Cook was Apple's Chief Operating Officer, Levinson was on both Apple's Board and Google's board, Gore and Jung were both on Apple's Board and on Apple's Compensation Committee, and Iger was on Disney's board.

The third theory was that, even if the 2018 Apple Board members did not participate in or facilitate the scheme, a majority of the Board faced a substantial risk of liability because they failed to make a reasonable inquiry that would have disclosed the scheme and they failed to stop it.

7

## IV.  DISCUSSION

### A.  *Failure to Adequately Allege Demand Futility is Demurrable*

We read plaintiff's opening brief as contending that it is not a proper ground for a demurrer that a complaint fails to adequately allege demand futility.  The contention lacks merit.  A failure to adequately allege demand futility results in the plaintiff lacking the legal capacity to bring a shareholder derivative action.  (Corp. Code, § 800, subd. (b)(2) [no shareholder derivative "action may be instituted or maintained . . . unless . . .[t]he plaintiff alleges in the complaint with particularity" a demand or the futility of making one].)  This is a proper ground for a demurrer.  (Code Civ. Proc., § 430.10, subd. (b) [lack of legal capacity to sue is a ground for a demurrer].)  "Viewed as a matter of standing, a determination on demurrer that a plaintiff has failed to adequately allege demand futility means the plaintiff has yet to establish standing to pursue the derivative claims."  (*Apple Inc.*, *supra*, 18 Cal.App.5th at p. 248.)

### B.  *Standard for Assessing Adequacy of Demand Futility Allegations*

The TAC alleged that Cook, Levinson, Iger, Gore, and Jung, five members of Apple's eight-member 2018 Board, could not fairly evaluate a demand.[4]  As the superior court did, we will assume that the TAC's allegations were adequate as to Cook, Levinson, and Iger[5] (who did not make up a majority of the eight-member 2018 Board).  We therefore limit our analysis to the TAC's allegations as to Gore and Jung.[6]

---

[4] The TAC also alleged that Wagner, a sixth member of Apple's 2018 Board, could not fairly evaluate a demand.  Plaintiff does not challenge on appeal the superior court's determination that the TAC's minimal allegations as to Wagner were inadequate, so we need not consider them.

[5] The TAC alleged that Iger could not impartially consider a demand because, as the CEO of Disney, it was "reasonable to assume that" he knew about the agreements, since Apple had an illegal agreement with Pixar and Pixar had an illegal agreement with Disney.

[6] The TAC made no allegations concerning Sugar or Bell, the two remaining members of the 2018 Board.

8

A demand is not futile if the Board " 'can impartially consider its merits without being influenced by improper considerations.' " (*Bader*, *supra*, 179 Cal.App.4th at p. 791.)  To demonstrate demand futility, the operative complaint must make " 'particularized factual allegations . . . [that] create a reasonable doubt that . . . the board of directors could have properly exercised its independent and disinterested business judgment in responding to a demand.' " (*Id*. at pp. 791-792.)  As plaintiff recognizes, the operative complaint must contain particularized allegations that create a " 'reason to doubt' " whether the Board "could fairly consider a demand."

### C.    *California Law Applies*

Plaintiff argues that the superior court erred by applying Delaware law rather than California law, thereby requiring him to "plead director knowledge" to show potential liability for breach of fiduciary duty when all that California law requires is "reckless disregard."  The superior court expressly applied a "reckless disregard" standard.  In any case, our review is de novo, and, because Apple is a California corporation, we apply California law.

Although California law applies, plaintiff "does not dispute that *Rales* [a Delaware decision] is applicable" in this case.  Since the derivative action was based on Apple's entry into illegal agreements and alleged use of illegally obtained compensation information, neither of which was an action alleged to have been approved by the Board, it is clear that *Rales* is the proper test under California law in this case.

### D.    *The* **Rales** *Test:  Director-By-Director Analysis is Required*

"[T]he *Rales* test asks whether 'the particularized factual allegations of a derivative stockholder complaint create a reasonable doubt that, as of the time the complaint is filed, the board of directors could have properly exercised its independent and disinterested business judgment in responding to a demand.  If the derivative plaintiff

9

satisfies this burden, then demand will be excused as futile.' "[7] (*Apple Inc.*, *supra*, 18 Cal.App.5th at p. 233; accord *Leyte-Vidal v. Semel* (2013) 220 Cal.App.4th 1001, 1009-1010.) " ' "[T]he court must be apprised of *facts specific to each director* from which it can conclude that that particular director could or could not be expected *to fairly evaluate the claims* of the shareholder plaintiff." [Citation.] Thus, the court, in reviewing the allegations to support demand futility, must be able to determine on a director-by-director basis whether . . . each possesses independence or disinterest such that he or she may fairly evaluate the challenged transaction.' [Citation.]" (*Apple Inc.*, *supra*, at p. 253, italics added.) "Broad or conclusory allegations are insufficient [citation], as are 'facts relating to the structural bias common to corporate boards . . . .' " (*Ibid.*)

" 'A director will be deemed not to be disinterested if the facts alleged "demonstrat[e] a potential personal benefit or detriment to the director as a result of the decision." ' [Citations.] Lack of independence means that a director is susceptible to ' "extraneous considerations or influences" ' rather than the ' "corporate merits of the subject before the board." ' [Citation.] It is not enough to claim that 'directors lack independence because they are dominated by' or were ' " 'personally selected' " ' by a controlling shareholder. [Citation.] Rather, 'the plaintiff is required to present specific facts showing "that through personal or other relationships the directors are beholden to the controlling person." ' [Citations.] Because the ' "threat of personal liability for approving a questioned transaction" by itself is insufficient to refute the disinterestedness or independence of a director' [citation], ' "[a] plaintiff may not 'bootstrap allegations of futility' by pleading merely that 'the directors participated in the challenged transaction

---

[7] Plaintiff seems to concede that the *Aronson* business judgment rule does not apply here.

or that they would be reluctant to sue themselves.' [Citation.]" [Citation.]' [Citation.]" (*Apple Inc.*, *supra*, 18 Cal.App.5th at p. 254.)

### E. This Court's Prior Decision on the SAC

This court's prior decision found that *the SAC's allegations* were "insufficient to support an inference of lack of disinterest or independence, at least as to directors Gore and Jung. The allegations regarding Gore and Jung do not extend beyond each of their general roles as a director and member of the compensation committee. The facts alleged about the committee's activities are unremarkable (e.g., overseeing compensation programs, approving salary and merit increase budgets, soliciting market research on Apple's competitiveness in compensation programs, and seeking shareholder approval for increasing employee stock-based compensation) and do not suggest the committee was informed—either directly or indirectly—of the agreements." (*Apple Inc.*, *supra*, 18 Cal.App.5th at p. 255.)

This court explained: "Without more, neither the general activities of the compensation committee, nor the detailed allegations regarding an Apple/Pixar agreement or Disney's 2006 acquisition of Pixar, support an inference that Gore knew of, let alone participated—as plaintiffs claim—in the alleged conspiracy. The same is true for director Jung, who plaintiffs simply allege 'was also on the Compensation Committee in 2008.' " (*Apple Inc.*, *supra*, 18 Cal.App.5th at pp. 255-256.) "We also are not persuaded that knowledge of Apple's nonsolicitation practices and allegedly anticompetitive agreements with other companies can be imputed to Gore and Jung, for purposes of establishing demand futility, merely because they served on the board or the compensation committee alongside directors who are the subject of more direct allegations." (*Id.* at p. 256.)

"In the absence of any facts to suggest the compensation committee was informed of Apple's nonsolicitation practices affecting recruitment and hiring, there is no basis to infer knowledge on the part of Gore or Jung. [¶] To be clear, our conclusion regarding

11

Gore and Jung is based on the absence of any particularized factual allegations to support an inference of even general knowledge about the purportedly anticompetitive agreements with other companies, let alone knowledge or involvement sufficient to disable them from fairly considering plaintiffs' claims. This is particularly true where Gore and Jung held no 'overlapping' board positions with companies listed on Apple's 'Hands Off' list, are not alleged to have had close personal or business relationships with individuals directly implicated by plaintiffs' allegations, and are not alleged to lack independence or to suffer ' "a substantial likelihood" ' of liability in connection with the anticompetitive conduct." (*Apple Inc.*, *supra*, 18 Cal.App.5th at p. 256.)

### F. *Relevant New Allegations in the TAC*

The TAC included further allegations of wrongdoing by alleging that, in addition to the illegal bilateral agreements, Apple had illegally exchanged compensation information with other companies. The TAC alleged that Apple "sought to decrease competition for employees through other means, including the exchange of confidential and sensitive compensation information with competitors," information which was used by the Board and the Compensation Committee to increase compensation.[8]

The TAC broadly (and conclusorily) alleged: "The entire Apple Board was aware that Apple's compensation program and salaries were benchmarked against competitor companies that shared confidential and sensitive compensation information. Indeed, the directors themselves were often the source of the information sharing."

The TAC added new allegations about the activities of the Compensation Committee, but these new allegations merely provided additional information about the

---

[8] However, the TAC also acknowledged that in 2004, prior to the alleged wrongdoing, Apple's Compensation Committee engaged an external market compensation consultant to prepare a market study on compensation comparing Apple's compensation to "a peer group of twenty-two technology companies" that were similar, and this study was utilized by the Compensation Committee in setting compensation at Apple.

Compensation Committee's routine meetings and continuing work on a compensation strategy. The TAC alleged that Apple employees who were aware of the illegal activity were present at Board and Compensation Committee meetings, but the TAC made no *particularized allegations*, beyond mere speculation, that this resulted in the Board or the Compensation Committee learning of, or having reason to suspect, the illegal activity.

The TAC added allegations that Gore and Jung personally benefited from the illegal agreements, but the sole basis for these allegations was that the agreements were intended to preserve Board relationships and avoid conflicts of interest. The TAC also added allegations that Gore and Jung faced a substantial likelihood of liability, but this too was based simply on the fact that they were directors, were on the Compensation Committee, and therefore should have known about the illegal activities and put an end to them.

The TAC added allegations that Gore was a Google "Senior Advisor" beginning in 2001 and continuing through the time of Apple's illegal agreement with Google, and that he "maintained a close relationship" with Google's cofounders, Sergey Brin and Larry Page, who were aware of the illegal agreement between Apple and Google. The TAC did not make any particularized allegations about the nature of Gore's role at Google or the nature of his "close relationship" with Brin and Page.

### G.    *Analysis*

Plaintiff argues that the TAC adequately alleged that Jung and Gore were "not disinterested" because they "benefited from, and participated in and approved of, the wrongful conduct challenged in the TAC," "face liability for their breaches of fiduciary duties owed to Apple and its shareholders due to their roles in approving and perpetuating the wrongful conduct," "lack independence" from other directors who are interested, and have "taken no action" against those responsible for the breaches of fiduciary duty after this action was filed in 2014 and instead sought dismissal of this action.

13

These contentions are merely conclusory statements without *particularized factual allegations* that create a reason to doubt that Gore specifically or Jung specifically could fairly evaluate a demand. Much of plaintiff's brief lacks *any* particularized allegations as to Gore or Jung. The new allegations in the TAC added little to remedy the inadequacies of the SAC that this court identified in its prior decision.

### 1. Compensation Committee Allegations

A central tenet of plaintiff's argument is that Gore's and Jung's membership on Apple's Compensation Committee was sufficient to raise a reasonable doubt about whether they could fairly consider a demand.

As we have already noted above, the new allegations in the TAC about the Compensation Committee's activities added little to the SAC's allegations in this regard, and they did not include any significant particularized allegations directed specifically at Gore or Jung.

Plaintiff relies on *In re Intuitive Surgical Shareholder Derivative Litigation* (N.D. Cal. 2015) 146 F.Supp.3d 1106, but that case does not assist him. In *Intuitive Surgical*, the district court noted that, "[g]enerally, 'an allegation that the underlying cause of a corporate trauma falls within the delegated authority of a board committee *does not* support an inference that the directors on that committee knew of and consciously disregarded the problem . . . .' " (*Id.* at p. 1121, italics added.) "[M]embership in the Compensation Committee alone is not sufficient to impute liability." (*Ibid.*) Only when the "[p]laintiff has pleaded sufficient particularized facts to show that *beyond the directors' membership* . . . , they knew of" the wrongdoing could demand futility be shown. (*Ibid.*, italics added.) Thus, *Intuitive Surgical* stands only for the proposition that membership in a committee is *insufficient* to demonstrate that a director cannot fairly evaluate a demand without particularized factual allegations showing that the specific director knew (or should have known) of the wrongdoing.

14

Here, particularized factual allegations as to Gore and Jung are lacking. The TAC merely alleged their membership in the Compensation Committee and itemized various routine duties that the Compensation Committee performed, none of which demonstrated that any of the members of the committee were involved in or knew or should have known of the illicit activity. The TAC alleged that Gore and Jung could not fairly evaluate a demand because they had been on Apple's Compensation Committee during the period when Apple entered into the illegal agreements and illicitly obtained compensation information from its competitors. However, these allegations, like those in the SAC, were largely based on generalized allegations about the functions of the Compensation Committee. For example, the TAC alleged that a compensation plan approved by the Compensation Committee had been based on illicitly obtained information and that the Board was aware of this, but the TAC included no particularized allegations as to how the Board or the Compensation Committee (or Gore or Jung in particular) would have gained such awareness. Conclusory allegations of this type are inadequate.

The TAC also alleged that the Compensation Committee had reviewed a "competitive market assessment" in 2007 in the course of approving a compensation plan, but the TAC did not include any particularized allegations as to how the Compensation Committee (or Gore or Jung in particular) would or should have known that this data might have been illicitly obtained. Indeed, the TAC merely alleged that the source of this data was unknown.

Plaintiff's reliance on *In re Wells Fargo & Co. Shareholder Derivative Litigation* (N.D. Cal. 2017) 282 F.Supp.3d 1074 is misplaced. In *Wells Fargo*, the district court found allegations of breach of fiduciary duty were sufficient where those allegations were specific to the particular defendant, who as Chief Risk Officer, oversaw "all risk-taking activities at Wells Fargo," because these allegations demonstrated that he "had access to information about the alleged fraud" and did nothing about it. (*Id.* at

15

p. 1108-1109.)  In contrast, none of the TAC's allegations reflected that Gore or Jung individually had responsibilities at Apple that supported an inference that either of them knew about or should have known about the wrongdoing.  Plaintiff also cites *Kruss v. Booth* (2010) 185 Cal.App.4th 699, but *Kruss* is readily distinguishable.  *Kruss* involved defendant directors who were alleged to have used a merger to siphon money out of the corporation and into entities controlled by them personally.  (*Id.* at p. 726.)  Nothing of that sort is alleged here.

Plaintiff asserts that members of the Compensation Committee necessarily would have known that the information they were utilizing was illicitly obtained because no legitimate source could possibly have provided such information.  The TAC provided no particularized factual allegations that could have served as the basis for such an inference, particularly since the TAC expressly alleged that the Compensation Committee had a history of obtaining information from third party market consultants.  The TAC contained no particularized allegations addressing how Gore or Jung should have known that only an illicit source could have provided data of this type.

The TAC's remaining allegations about the Compensation Committee were also inadequate.[9]  It alleged that knowledge of the illegal agreements could reasonably be inferred as to all members of the Compensation Committee because Apple employees with knowledge of the illegal agreements had at times made presentations on compensation-related topics to the Compensation Committee, though there were no allegations that these presentations included information about the illegal agreements.  The TAC alleged that Gore was on the Compensation Committee in 2007 when the

---

[9] The TAC also alleged that Gore was on another Apple committee that was charged with ensuring compliance with Apple's "Guidelines," which included an admonition that agreements with competitors regarding sales and products were barred, and a rule that laws should be followed.  If there were particularized allegations that Gore knew or should have known of wrongdoing, these allegations might be relevant.  But such allegations were lacking.

16

committee approved a new compensation plan based on a "competitive market assessment," but it failed to link this to any illegal activity that Gore or Jung should have known about. The TAC alleged that some of the data reviewed by the Compensation Committee may have been illegally obtained, but it did not allege how Gore or Jung knew or should have known this.

We conclude that the TAC's allegations concerning the Compensation Committee did not include particularized factual allegations demonstrating that there was a reason to doubt whether Gore or Jung could fairly evaluate a demand.

### 2. *Personal Benefit Allegations*

Although plaintiff claims that Gore and Jung "benefited from, and participated in and approved of, the wrongful conduct challenged in the TAC," the TAC contained no particularized allegations that either of them "participated in" or "approved of" the illegal agreements or the illicit obtaining of information. The TAC's allegations were limited to a claim that Gore and Jung "benefited from" the illegal agreements, and the only allegations made to support this were that they were on the Board and that one of the purposes of the illegal agreements was to preserve Board relationships and reduce conflicts of interest.

Here again, the TAC's allegations in this regard were inadequate. The TAC alleged that Apple had a unilateral, *legal* policy of not soliciting employees at companies where its directors had positions in order to preserve Board relationships and reduce conflicts of interest. Since the legal policy provided essentially the same benefit that plaintiff claims the illegal agreements provided, no personal benefit to Gore or Jung could reasonably be attributed to the illegal agreements.[10] Moreover, no particularized factual allegations in the TAC support plaintiff's claim that every director personally

_____

[10] Consequently, we need not consider the validity of plaintiff's claim that a benefit that a director is unaware of could raise a reason to doubt whether the director could fairly evaluate a demand.

17

benefited from the wrongdoing simply because one of the purposes of the agreements was to preserve board relationships and reduce conflicts of interest. The assertion lacks any particularity as to Gore or Jung. Neither of them was a director at another company involved in these agreements, and there were no particularized allegations that Gore benefited in some way from the illegal agreements due to his role as a Google Senior Advisor. Nor does plaintiff explain how Gore's close relationship with Google's cofounders, Brin and Page, suggested a *personal benefit to Gore* from the illegal agreements.

### 3. *Potential Liability Allegations*

Plaintiff claims that Gore and Jung could not fairly evaluate a demand because both of them are potentially liable for breach of fiduciary duties based on their membership on the Board and Compensation Committee. Again, the TAC lacks any particularized factual allegations that could form a basis for a reasonable doubt as Gore's or Jung's ability to fairly evaluate a demand.

### 4. *Lack of Independence*

Plaintiff contends that the TAC adequately alleged that Gore and Jung could not fairly evaluate a demand due to their "lack of independence."

He claims that Gore's relationship with *Schmidt*, Google's CEO and a former Apple director, established that Gore lacked independence. This appellate assertion lacks record support. None of the record citations that plaintiff provides are to any allegations that Gore had a close relationship with *Schmidt*, but only to allegations that he had such a relationship with Brin and Page, who had no role at Apple. We reject this unsupported contention.

Plaintiff's sole argument concerning Jung's lack of independence is that her position as CEO of Avon, which had done business of some unspecified kind with Apple at some point, made her beholden to her fellow directors. The TAC did not allege that Avon's business with Apple related in any way to the illegal agreements or the illicitly

18

obtained information, and the TAC did not allege that Avon had any illegal agreement with Apple. Plaintiff's claim that Jung lacked independence is speculative and unsupported by any particularized factual allegation that could support such an inference.

Plaintiff argues that it is a reasonable inference that the transactions between Avon and Apple "were for the benefit of Jung" and therefore that Jung "received a personal financial benefit not shared equally with all Apple shareholders." But this argument has no relationship with the nature of the demand that plaintiff claims would have been futile. Plaintiff simply claims that this inference would support a finding that Jung was not independent because other directors who were not disinterested must have approved the transactions that benefited her. As there is no basis for such an inference, his claim does not support a doubt as to Jung's independence or her ability to fairly evaluate a demand.

### H. *Leave to Amend*

Plaintiff claims that the superior court erred in denying leave to amend because additional discovery that he had sought but not received could have supported new allegations sufficient to satisfy the demand futility requirements.

When a demurrer "is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.] The burden of proving such reasonable possibility is squarely on the plaintiff." (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)

In 2015, after defendants' demurrer was sustained with leave to amend to the original complaint, the parties agreed to a certain amount of discovery. Following the court's sustaining of the demurrer to the amended complaint, plaintiff sought, and

19

defendants provided, additional discovery.[11]  After the court ruled on the demurrer to the SAC, it lifted the discovery stay.  Before this court's decision overturning the superior court's ruling on the demurrer to the SAC, plaintiff sought discovery, and defendants provided discovery.

The TAC was filed in March 2018, and defendants' demurrer was filed in May 2018.  It was not until July 2018 that plaintiff filed a motion to compel further responses to the discovery he had sought (and obtained) after the superior court's ruling on the SAC.  Plaintiff's motion to compel discovery was heard along with the demurrer to the TAC.  The court denied the motion on the ground that further discovery was "highly unlikely" to produce "fruitful" information.

Plaintiff bears the burden of proving that there is a reasonable possibility that he could remedy the TAC's demand futility deficiencies, but he does not attempt to describe the amendments he would make.  He merely argues that the denial of his motion to compel prevented him from making additional allegations.   He does not detail the information that was sought and states only that further discovery might show "the Compensation Committee members' knowledge of matters" relevant to demand futility.

We conclude that plaintiff has failed to satisfy his burden of proving that there is a reasonable possibility that he could remedy the TAC's deficiencies.  We find no abuse of discretion in the superior court's sustaining of the demurrer without leave to amend.

## V.     DISPOSITION

The judgment is affirmed.

---

[11] When the court granted another round of discovery in February 2016, it told plaintiff:  "Third go around.  So, I'm going to be less inclined to, if and when there's another demurrer, to give a third bite at the apple for discovery."

20

_____

ELIA, ACTING P.J.

WE CONCUR:


_____

GROVER, J.


_____

DANNER, J.


*Krawczyk v. Cook et al.*
H046506